CORRUGATED FIBRE MILLS, INC., Respondent, *v.* LOSEI REALTY CORPORATION, Appellant.

First Department, November 14, 1924.

**Vendor and purchaser — action to recover damages for breach of covenants in land contract — breach charged was failure to bulkhead and fill in land, take necessary steps to open street, obtain consent for railroad switch, and to install switch — general verdict based on difference between value of land with and without improvements improper, if any element of damage admitted was improper — finding that defendant had not completed bulkhead and had not taken steps to open street against evidence — failure to install switch not element of damages as plaintiff had been paid under contract for failure so to do — holding by trial court that failure to install switch could not be considered did not withdraw that element which was included in expert's estimate.**

In an action to recover damages for the breach of covenants in a land contract in which it was alleged that the defendant violated its covenants relating to bulkheading and filing in the land, taking all necessary steps to open a street, obtaining consent for a railroad switch and installing the same, a general verdict of the jury for the maximum amount of damages sworn to by an expert witness based on the difference between the value of the property with and without the improvements cannot be sustained if any element on which the estimate and the verdict of the jury was based was improperly considered.

The finding of the jury that the defendant failed to complete the bulkhead and that it did not take all proper and necessary steps for the opening of the street is against the weight of the evidence.

It was error for the court to allow the jury to take into consideration, as an element of the damage, the failure to install a railroad switch and siding, since it appeared that under the agreement of the parties, the defendant paid the plaintiff a stipulated sum per day for failure to install the switch and siding.

The holding by the trial court at the close of the case that the jury should not consider as an element of damage the failure to install the switch and siding did not withdraw that element from the jury, since it was one of the elements relied on by the expert witness in estimating the damages suffered by the plaintiff, and it was, therefore, actually included in the expert's valuation, which formed the basis of the verdict.

APPEAL by the defendant, Losei Realty Corporation, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of November, 1923, upon the verdict of a jury.

*Tipple & Plitt* [*Wilson E. Tipple* of counsel; *Adolph Hansen* with him on the brief], for the appellant.

*Henry S. Mansfield,* for the respondent.

DOWLING, J.:

This is an action at law to recover damages for breach of contract. On May 7, 1917, defendant entered into an agreement with one Tobias E. Raffel whereby the defendant agreed to sell Raffel certain land and factory buildings thereon, located at Mill Basin, Brooklyn, an inlet of Jamaica bay, adjacent to the easterly terminus of Flatbush avenue. The contract, modified by a supplemental agreement attached thereto, was assigned by Raffel to plaintiff. The contract of sale contained the following covenant:

" The Purchaser is to have a right of way to this property over the land of the Seller until the opening of Avenue U, and the Seller hereby covenants and agrees with the Purchaser to forthwith take all proper and necessary steps for the opening of said Avenue U from Flatbush Avenue to, across and over the land hereby agreed to be conveyed to the Purchaser and also will undertake with due and proper expedition to obtain the necessary consent for the installation of a switch and siding from the tracks of the Brooklyn Rapid Transit Company, to, in, and over the premises hereinabove described, and to forthwith proceed to install the same. Neither party hereto shall be entitled to any compensation for land taken for the opening of said Avenue U, and each party shall donate so much of its land as lies within the lines of the proposed Avenue U, for this purpose. All expenses incurred for the opening of said Avenue U and for the installation of such switch and siding and for work, labor and material required in connection therewith, shall be paid for by the Seller and Purchaser, in proportion to the frontage of their land upon said Avenue U, such work to be conducted by or under the supervision of the Seller. But said Purchaser shall at the request of said Seller join in any contracts or other instruments necessary or proper for the conduct of said work and be and become liable for its proportionate share of the cost thereof, and its share of the cost shall become a lien upon the land so conveyed to it; payments on account of said work shall be made by the Purchaser whenever the Seller shall require the same.

" The Seller also agrees to complete the bulkheading and filling-in of the premises hereby contracted to be conveyed to the Purchaser in accordance with its present contract for doing said work, except that said filling-in shall not be to any greater height than is desired by said Purchaser."

The supplemental agreement provided, among other things:

" Supplemental to the foregoing contract, it is mutually agreed between the parties thereto, that in case an extension of the Brooklyn Rapid Transit Road from Avenue U and Flatbush Avenue, to the property described in the foregoing contract is not completed on or before July 15th, 1917, that the said Losei Realty Company will, for and during the period subsequent to July 15th, 1917, that the said road may not be so completed, pay to the said Tobias E. Raffel, the actual expense incurred by him or his assigns for the use of a team and wagon in the carting of goods to and from the property hereby contracted to be conveyed, not exceeding the sum of $8.00 per day.

" It is also agreed by Tobias E. Raffel that this contract may be cancelled by the seller on payment of $5,000, on or before the date herein set for the closing of the sale, together with such actual disbursements as may have been incurred by the said purchaser in repairing the buildings on said property."

On June 1, 1917, defendant conveyed to plaintiff the premises contracted to be sold, and by a separate agreement in writing between the parties, made at the time of closing, it was " expressly covenanted that the agreements between the said parties hereto, contained in the contract of sale of said premises, respecting the right of way over land of the seller; the opening of U avenue; the installation of a railroad switch; the work of bulkheading and filling in; the agreement for allowance of expense of carting goods, and all other provisions not fulfilled at the time of the execution and delivery of the deed of said premises, shall continue in full force and effect after the delivery of such deed, and shall be binding upon the respective parties to said contract of sale, their successors and assigns."

This action was brought to recover damages claimed to have been sustained by plaintiff by reason of defendant's failure to fulfill its covenants in respect to (1) bulkheading and filling-in of the land; (2) taking the necessary and proper steps for the opening of Avenue U from Flatbush avenue to, across and over, the land conveyed to plaintiff; (3) obtaining the necessary consent for the installation of a switch and siding from the tracks of the Brooklyn Rapid Transit Company to, in and over said lands; (4) installing of the aforesaid tracks.

The complaint contains the averment: " 25. That because of the failure of the defendant to complete the bulkheading and filling in of said premises as aforesaid, and because. of its failure to procure the extension of the Brooklyn Rapid Transit road heretofore referred to, due to its failure to bulkhead and fill in the said lands, the defendant has paid, in compliance with the

covenant for the payment thereof, contained in ' Exhibit A,' to the plaintiff, the sum of $8.00 per day from July 16th, 1917, up to the time of the commencement of this action, for the use of a team and wagon in the cartage of goods to and from said premises."

The complaint demanded damages in the sum of $300,000.

The learned trial court charged the jury that, " The measure of damages is the difference between the value of the land with the improvements of the character that have been mentioned and without them. It is claimed by the plaintiff that if the improvements had been made they would have rendered the land, without the buildings, of the value of between $60,000 and $75,000, and that the value of the land, exclusive of the improvements, would be $30,000, and it is claimed that the plaintiff suffered damage between the sums I have mentioned."

The jury returned a verdict in favor of plaintiff in the sum of $45,000, the maximum amount recoverable under the charge of the court and the testimony of plaintiff's expert witness.

Upon this record the judgment appealed from must be reversed, as the verdict of the jury was a general one, if any one of the elements upon which the recovery was based was improperly submitted to them, and not sufficiently established by evidence to justify the inclusion thereof as one of the elements constituting the total damage testified to by plaintiff's expert witness and evidently accepted by the jury in returning a verdict coinciding in amount with the expert's maximum estimate of damage.

We find that the implied finding of the jury, as evidenced by its verdict, that defendant had breached the agreement in the following particulars, cannot be sustained:

(1) The finding of the jury that defendant had failed to complete the bulkhead is against the weight of the evidence, which in our opinion clearly preponderates in favor of defendant, particularly in view of the positive testimony given to that effect by the witnesses Lonas and Adcock, supported by the photographs showing the apparent completion of the bulkhead, as opposed to the vague and unsatisfactory testimony of the witness Miss Cohen to the contrary.

(2) The finding of the jury that defendant had failed to take all proper and necessary steps for the opening of Avenue U is against the weight of the evidence. Defendant did not insure or guarantee the opening of the avenue. All it agreed to do was " to forthwith take all proper and necessary steps for the opening of said Avenue U from Flatbush avenue to, across and over the land hereby agreed to be conveyed to the Purchaser." The defendant's witness Lonas testified to the steps taken by defendant to secure the opening of Avenue U, which were communicated to

Raffel, plaintiff's president, and acquiesced in by him. Such steps as detailed at length were all that could reasonably be taken to secure the opening of the avenue. They were expeditiously taken and prosecuted, and defendant was not responsible for the failure of the appropriate city authorities to authorize such opening up to the time of the trial. No evidence whatever was produced by plaintiff to controvert this evidence, some of which is in documentary form.

(3) It was error to allow the jury to take into consideration as an element of damage to the property the failure to install a switch and siding. Plaintiff's expert witness had included the absence of the switch and siding as one of the items in arriving at the total damage testified to by him, despite specific objection made by defendant's counsel to its inclusion in the question put to the witness as to the value of the property with and without certain improvements thereon, including the presence or absence of such switch and siding. The parties had agreed by their supplemental contract that if the switch and siding " is not completed on or before July 15th, 1917, that the said Losei Realty Company will, for and during the period subsequent to July 15th, 1917, that the said road may not be so completed, pay to the said Tobias E. Raffel, the actual expense incurred by him or his assigns for the use of a team and wagon in the carting of goods to and from the property hereby contracted to be conveyed, not exceeding the sum of $8.00 per day."

The complaint admitted the receipt from defendant of payment of this sum of eight dollars per day down to the time of the commencement of this action.

The learned trial court properly held, at the close of the case and before the summing up by counsel: " As I read the supplemental agreement, the parties intended to fix the actual damages for failure to obtain consent to the installation of a switch and siding upon the tracks of the B. R. T., instead of mere damages for the delay in obtaining the same, as claimed by the plaintiff. I am therefore of the opinion that the question relative to such switch is one not to be considered by the jury, and I sustain the objection of defendant's counsel with respect to that matter of the switch." But this did not disturb the testimony of the expert witness, which included this as an element of damage, and though the learned trial court did not, in his charge to the jury, refer to the absence of a siding and switch as giving any right to plaintiff to recover damages therefor, he did charge them in laying down the rule of damages above quoted, that the plaintiff's claim was that if the improvements had been made they would have rendered the land, without the buildings, of the value of between $60,000

and $75,000, which is the amount fixed by plaintiff's expert as its value including, among other improvements, the switch and siding. So that, although the court did not specifically submit to the jury that item as an element of damage, it was actually before them included in the expert's valuation, which formed the basis of their verdict of $45,000, the difference between his highest estimate of value of the the land if improved as contracted for ($75,000) and its value without the improvements ($30,000).

The judgment appealed from should, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.